**STATE of Minnesota, Appellant,**

v.

**Ralph Fredrick BISTODEAU, Respondent.**

No. C0–98–504.

Court of Appeals of Minnesota.

Aug. 25, 1998.

Hubert H. Humphrey III, Attorney General, James P. Spencer, Assistant Attorney General, St. Paul, for appellant.

Lisa D. Lodin, St. Paul, for respondent.

Considered and decided by KALITOWSKI, P.J., RANDALL and SCHUMACHER, JJ.

## OPINION

RANDALL, Judge.

Appellant argues that the district court erred when it concluded that it had jurisdiction over money seized from respondent at the time of his arrest (money subject to a possible future forfeiture under Minn.Stat. § 609.762 (1996)). Appellant also argues that the district court further erred when it ruled that respondent could pay his criminal fine with a portion of the seized money. We affirm.

## FACTS

On April 2, 1997, respondent Bistodeau was charged in two different complaints filed in Hennepin County District Court with operating an illegal gambling operation and possession of stolen property. In one inci-dent, the police, on October 25, 1996, seized over $18,000 in cash at an address in Minneapolis owned by Bistodeau. In the other, the police, on January 25, 1997, seized $2,000 in cash from Bistodeau's person and then again took $6,000 from the same address listed in the first complaint.

On September 23, 1997, Bistodeau pleaded guilty to one felony count of possession of stolen property, two felony counts of unlawful possession of tip-boards, and two gross misdemeanor counts of running a gambling place and running a disorderly house. On November 4, 1997, the district court sentenced Bistodeau to one year and one day in prison, staying execution of the sentence on the condition that Bistodeau serve one month in the county jail and five months on home detention. In addition, the district court ordered Bistodeau to pay fines totaling $6,000. Pursuant to defense counsel's request, the district court ordered that Bistodeau be allowed to pay the fines with the money that was seized by police during the investigation. The state moved the district court to reconsider its decision, arguing that the court lacked jurisdiction over the money. The district court denied the state's motion to reconsider.

## ISSUES

I. Did the district court properly exercise jurisdiction over seized money subject to possible forfeiture proceedings under Minn.Stat. § 609.762 (1996), when no forfeiture action had been commenced?

II. Did the district court err when it allowed respondent to pay his criminal fines with a portion of the seized money?

## ANALYSIS

### I. Jurisdiction

■ All money, property, or material "used or intended for use" in illegal gambling activities is subject to seizure and forfeiture. Minn.Stat. § 609.762, subd. 1(b), 2 (1996). Property seized must be forfeited after a conviction for illegal gambling, and to do so

(a) a separate complaint must be filed against the property describing it, charg-

ing its uses in the specified violation, and specifying the time and place of its unlawful use; [and]

\* \* \* \*

(c) if after conviction the court finds the property, or any part of it, was used in violation as specified in the complaint, it shall order that the property be sold or retained by the law enforcement agency for official use. Proceeds from the sale of forfeited property may be retained for official use and shared equally between the law enforcement agency investigating the offense involved in the forfeiture and the prosecuting agency that prosecuted the offense involved in the forfeiture and handled the forfeiture proceedings.

Minn.Stat. § 609.762, subd. 4(a), (c) (1996). The gambling forfeiture statute is a quasi-penal statute and is to be strictly construed with any doubt as to its meaning resolved in favor of the defendant. *St. Louis County Attorney's Office v. $24,643.01,* 524 N.W.2d 542, 545 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995).

Here, the state argues that the district court lacked jurisdiction over the seized money and therefore could not order that Bistodeau be allowed to pay his criminal fines with that money. The state relies on the language of Minn.Stat. § 609.762, subd. 3 (1996). This section provides that

[p]roperty taken or detained under subdivision 2 is not subject to a replevin action, but is considered to be in the custody of the law enforcement agency subject only to the orders and decrees of the court having jurisdiction over the forfeiture proceedings.

*Id.* The state argues that

the statute makes clear that the forfeiture court has *exclusive* jurisdiction over the seized funds, with the criminal court having no jurisdiction to dispose of the money.

The state claims that if the criminal court's decision is allowed to stand, the forfeiture court will not be able to turn all the forfeited money over to the law enforcement agency since part has now been used to pay a fine.

This court rejected similar reasoning in *State, Dep't of Pub. Safety v. $6,276,* 478 N.W.2d 333 (Minn.App.1991), *review denied* (Minn. Jan. 30, 1992). In that case, the police, in 1986, seized money allegedly used in an illegal gambling operation by defendant. *Id.* at 334. In 1987, defendant was convicted of illegal gambling. *Id.* Then, three years later, in 1990, the state commenced a forfeiture action against the seized money and defendant pursuant to the gambling forfeiture statute. *Id.* at 335. The district court dismissed the action, concluding that it was barred by a two-year statute of limitation and ordered the seized money returned to defendant. *Id.* On appeal, the state argued that if the forfeiture court could not exercise jurisdiction because the statute of limitations had run, no court could exercise jurisdiction over the seized funds. *Id.* at 336. This court rejected that argument as "without merit," holding that under the state's reasoning, "[i]f the statute of limitations a claimant wishes to use to regain seized property has run, he can find no court with jurisdiction \* \* \*." *Id.* The court noted that "[u]nder the state's interpretation of the statute, if the state does not bring a forfeiture action, a claimant could never regain his seized property." *Id.*

Here, respondent agrees that the seized money is subject to possible forfeiture under the Minn.Stat. § 609.762, subd. 1 (1996). But at present, the state has not started a forfeiture action against the money. If we were to adopt the state's argument, no court could exercise jurisdiction over the seized money because no forfeiture proceeding has been commenced. Further, no court could ever have jurisdiction over the seized funds unless and until the state chose to file a forfeiture action against the money. Thus, under the state's argument, unless the state commenced a forfeiture action, a claimant or innocent third party could never regain property or assets seized by the police. Under the state's theory, no court would ever have jurisdiction to rule on the funds unless the state "chose" to give a district court jurisdiction by starting a forfeiture proceeding. Such a result is absurd and was not intended by the legislature. *See* Minn.Stat. § 645.17(1) (1996) (legislature does not intend absurd result).

The district court here, acting as the criminal court on respondent's charge, had jurisdiction over the seized funds pursuant to Minn.Stat. § 626.04 (1996). This section provides:

> When any officer seizes, with or without warrant, any property or thing, it shall be safely kept by direction of the court as long as necessary for the purpose of being produced as evidence on any trial. *After the trial the property or thing shall, unless otherwise subject to lawful detention, be returned to its owner or any other person entitled to possess it. Any property or thing seized may be destroyed or otherwise disposed of under the direction of the court.* Any money found in gambling devices when seized shall be paid into the county treasury. If the gambling devices are seized by a police officer of a municipality, the money shall be paid into the treasury of the municipality.

*Id.* (emphasis added). A later forfeiture court would *also* have jurisdiction, if the state chose to commence a forfeiture proceeding, but unless the state has commenced a forfeiture proceedings, the district court handling the criminal end of it has first and prior jurisdiction. The seized money was not subject to any pending forfeiture action at the time of Bistodeau's sentencing. The money was never subject to "lawful detention." There was no pending forfeiture action against the seized money at the time of the district court's decision. It did not interfere with any forfeiture proceeding, as no forfeiture proceeding was pending. The district court was not, nor should it have been, required to anticipate the "future" actions of the state; that is, the district court was not required to anticipate whether the state was going to file a forfeiture action against the money. *Cf. State v. Sutterfield,* 347 N.W.2d 295, 296 (Minn.App.1984) (holding district court in criminal case could not refuse to return seized firearms after charges were dropped on ground that firearms were subject to possible forfeiture under federal law where there was no forfeiture proceeding in state court and could not be). Accordingly, the district court had jurisdiction to rule on the issue of whether the seized money could be applied toward a criminal fine.

We note that nothing precluded the state from filing for forfeiture action under Minn. Stat. § 609.762, subd. 3, at the same time it filed the criminal complaint. The state could have requested that the forfeiture action be stayed, pending resolution of the criminal proceeding. If Bistodeau was found guilty after trial or pled guilty, the state could renew the forfeiture action and demand the seized money pursuant to Minn.Stat. § 609.762, subd. 3. The state did not do so. Simply put, the district court beat the state to that portion of the seized funds that were applied to the criminal fine.

## II. Payment of Fines

■ We conclude that the district court properly ordered that Bistodeau be allowed to pay his criminal fine with a portion of the seized money. In *State v. Mozeley,* 450 N.W.2d 149, 151 (Minn.App.1990), the district court ordered defendant to reimburse the county for the cost of his court-appointed counsel from funds that were seized at the time of his arrest. This court observed that the money seized from defendant, as contraband, was subject to forfeiture under Minnesota law and that the state should have brought a forfeiture action against the money. *Id.* at 152. Regardless, this court held that "[t]he trial court did not abuse its discretion in ordering reimbursement out of the cash seized from [defendant]." *Id.*

■ By holding that the district court could order reimbursement of the costs of defendant's court-appointed attorney from the funds seized from defendant, this court recognized in *Mozeley* that the district court had jurisdiction over the seized funds, even if the funds seized were subject to a possible future forfeiture. There is no legal difference between allowing a defendant to reimburse the public defender's office with seized funds and allowing a defendant to pay for a private attorney with seized funds. Contrary to the state's assertions, there is nothing to distinguish this case from the holding in *Mozeley.* At oral argument, the state sought to distinguish *Mozeley* by arguing that the state "acquiesced" in the district court's action in that case. We note that district court jurisdiction is "not conferred by the state's consent." Consent of the state is not required before a district court can exercise

jurisdiction over seized money, even seized money that theoretically could be subject to a possible future forfeiture action.

## DECISION

The district court properly exercised jurisdiction over the seized money. No forfeiture action had been commenced by the state under Minn.Stat. § 609.762 (1996). The district court did not err when it ordered that respondent could pay his criminal fine with a portion of that money.

**Affirmed.**